AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
FEB 25 2020
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Black Blade ZTE cellular phone
FP&F No. 2020565500010201; IMEI: 868504031972732
("Target Device #2")

Case No. 20MJ0845

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference

located in the _____ Southern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324 | Alien Smuggling |

The application is based on these facts:

See attached Affidavit of Border Patrol Agent Giancarlo Lugo

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Border Patrol Agent Giancarlo Lugo
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/25/20

*Judge's signature*

City and state: San Diego, CA     Hon. Michael S. Berg, United States Magistrate Judge
*Printed name and title*

# ATTACHMENT A2

## PROPERTY TO BE SEARCHED

The following property is to be searched:

**Black Blade ZTE cellular phone**
**Seized as FP&F No. 2020565500010201**
**IMEI: 868504031972732**
**("Target Device #2")**

Target Device is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone(s) described in Attachment(s) A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone(s) for evidence described below. The seizure and search of the cellular telephone(s) shall follow the search methodology described in the affidavit submitted in support of the warrant(s).

The evidence to be seized from the cellular telephone(s) will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of October 26, 2019 through November 27, 2019:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

3

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324.

# AFFIDAVIT

I, Giancarlo Lugo, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

> **Blue Motorola cellular phone**
> FP&F No. 2020565500010201
> IMEI: 35219100845426
> ("Target Device #1")
>
> **Black Blade ZTE cellular phone**
> FP&F No. 2020565500010201
> IMEI: 868504031972732
> ("Target Device #2")

the "**Target Devices**"), as further described in Attachments A-1 and A-2, and to seize evidence of crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant(s) relate(s) to the investigation and prosecution of Luis Stephen HARO for smuggling an illegal alien from Mexico into the United States. The **Target Devices** are currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrant(s) and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

## TRAINING AND EXPERIENCE

4. I have been employed by the USBP since 2008, and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for ten years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work

in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications,

3

photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

   c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

   d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

4

f.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11. While on static surveillance, agents from the El Centro Border Patrol Sector Intelligence Unit, have observed a documented alien smuggler, Luis Stephen HARO, driving in loops near the area of several suspected stash houses in a white Ford Fiesta. While driving in circles, HARO was seen many times looking in all directions while speaking on a cell phone. Agents suspected that HARO was involved as a lookout in alien smuggling operations.

12. On November 27, 2019, at approximately 2:37 PM Supervisory Border Patrol Agent M. Clinton received an alert on his government issued cell phone regarding the Ford. The alert indicated that the Ford was traveling westbound on Interstate 8, leaving Imperial County towards San Diego, California. The Interstate 8 Border Patrol Checkpoint located in Pine Valley, California had become inoperable due to inclement weather about thirty minutes before. At approximately 2:45 PM, Agent Clinton contacted San Diego Sector Border Patrol Dispatch and asked them to broadcast a Be-On-The-Lookout (BOLO) to Campo Border Patrol Agents. Agent Clinton informed the dispatcher that the vehicle was likely involved in alien smuggling and urged the agents to exercise extreme caution based on HARO's status as a gang member.

13. On November 27, 2019, Supervisory Border Patrol Agent G. Davis was conducting assigned duties in the Campo Border Patrol Station's area of responsibility. At approximately 3:00 PM, the Tactical Communications Center (TCC) notified agents of a BOLO for a white Ford Fiesta, bearing a California license plate. TCC further alerted that the vehicle would be driven by a heavy set Hispanic, known gang member and likely involved in alien smuggling. Agent Davis began observing traffic along westbound Interstate 8, near Buckman Springs Road, as the United States Border Patrol checkpoint was not operational at this time.

14. At approximately 3:05 PM, Agent Davis located the vehicle described in the BOLO, after it passed the checkpoint, and proceeded to follow it to make further observations. Agent Davis observed multiple occupants inside the vehicle. As he got closer, Agent Davis observed a heavy set Hispanic male driver, later identified as the defendant Luis Stephen HARO, and a front seat passenger, later identified as Material Witness Alejandro VIEYRA-Manriquez. In the backseat, Agent Davis observed what appeared to be something or someone laying down. After crossing over the Pine Valley Bridge, Agent Davis made eye contact with HARO, HARO slammed his hands on the steering wheel multiple times, in what appeared to be a sign of anger. Furthermore, the entire time Agent Davis was behind the Ford Fiesta, HARO and VIEYRA did not appear to be conversing or looking around but merely staring straight ahead. At approximately 3:10 PM, he initiated a vehicle stop in the westbound lanes of Interstate 8 near the "Las Bancas" overpass.

15. Agent Davis approached the Ford Fiesta, from the passenger side, and asked HARO to lower all of the windows and to turn the vehicle off, to which he complied. Agent Davis identified himself as a Border Patrol Agent and conducted an immigration inspection. HARO stated that he was a United States citizen and VIEYRA just said "Calexico." Based upon VIEYRA'S initial answer Agent Davis asked him to step out of the vehicle so he could question him further, away from HARO. Agent Davis again asked VIEYRA as to his country of citizenship. VIEYRA stated he was a citizen of Mexico without immigration documents to be in or remain in the United States legally. At approximately 3:20 PM, Agent Davis placed VIEYRA and HARO under arrest. This location is approximately 17 miles north of the United States/Mexico International Boundary and approximately three miles east of the Tecate, California Port of Entry. HARO was in possession of two cell phones (**Target Devices**) at the time of arrest.

16. Material witness Alejandro VIEYRA-Manriquez, stated that he is a citizen of a Mexico, without immigration documents which would allow him to enter or remain in the United States legally. VIEYRA stated he was going to pay $5,000 to be illegally

6

smuggled to Los Angeles, California. VIEYRA described the driver in this smuggling event as a white male with short hair, a beard and a tattoo on his right arm, approximately 35 years old. VIEYRA stated he sat in the front passenger seat next to the driver. HARO was in possession of two cell phones (**Target Devices**) at the time of arrest. On November 29, 2019, Honorable Jill L. Burkhardt signed a search warrant authorizing the search and seizure of the **Target Devices**. (*In the Matter of the Search of Black Blade ZTE cellular phone*, 19MJ5358; and *In the Matter of the Search of Blue Motorola cellular phone*, 19MJ5359). In accordance with the terms of the warrant, the Target Devices were to be searched by December 11, 2019. Due to a miscommunication, the phones were not delivered to the lab responsible for performing the forensic download and the lab was unaware that a warrant had been obtained. Accordingly, the Target Devices were not transported to the lab and were not searched by December 11, 2019. Accordingly, the undersigned Border Patrol Agent is seeking a new warrant.

## METHODOLOGY

17. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "airplane mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for

acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

20. Law enforcement has previously attempted to obtain the evidence sought by this warrant through the owners' consent. Consent was not given. Additionally, as referenced above, on November 29, 2019, Honorable Jill L. Burkhardt signed a search warrant authorizing the search and seizure of the **Target Devices**. (*In the Matter of the Search of Black Blade ZTE cellular phone*, 19MJ5358; and *In the Matter of the Search of Blue Motorola cellular phone*, 19MJ5359). In accordance with the terms of the warrant, the **Target Devices** were to be searched by December 11, 2019. Due to a miscommunication, the phones were not delivered to the lab responsible for performing the forensic download and the lab was unaware that a warrant had been obtained. Accordingly, the **Target Devices** were not transported to the lab and were not searched by

December 11, 2019. The undersigned Border Patrol Agent is therefore seeking a new warrant.

## CONCLUSION

21. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Devices** will yield evidence of alien smuggling violation of Title 8, United States Code, Sections 1324.

22. Because the **Target Devices** were seized at the time of HARO's arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Devices**. As stated above, I believe that the appropriate date range for this search is from **October 26, 2019 through November 27, 2019**.

23. Accordingly, I request that the Court issue warrants authorizing law enforcement to search the item(s) described in Attachment(s) A-1 and A-2, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Giancarlo Lugo
Border Patrol Agent

Subscribed and sworn to before me this 25th day of February, 2020.

Hon. Michael S. Berg
United States Magistrate Judge

9